**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

KEN JOHANSEN on behalf of himself   :
and others similarly situated,            :
                                   :
      Plaintiff,                 :
v.                                 :
                                   :    Case No. 1:17-cv-03604
SANTANNA NATURAL GAS       :
COPORATION, dba SANTANNA     :
ENERGY SERVICES,          :    Honorable John Z. Lee
                                   :
      Defendant,   Third-Party  :
      Plaintiff                :
v.                                 :
                                   :
LIBERAL UNTIED MARKETING,   :
INC. a/k/a LIBERAL UNITED     :
MARKETING C AND P          :
INC. and JACOB T. ADIGWE,    :
                                 :
      Third-Party Defendants.    :
                                 :
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION.................................................................................................1

II. NATURE AND BACKGROUND OF THE CASE ..........................................2

    A. The Litigation and Settlement Negotiations ..........................................3

III. THE PROPOSED SETTLEMENT ...................................................................5

    A. The Settlement Class ...............................................................................5

    B. Settlement Relief ......................................................................................5

        1. Class Member Relief: Settlement Fund ......................................5

        2. Class Member Relief: Remedial Measures ................................6

        3. Class Representative Incentive Award .......................................6

        4. Attorneys' Fees and Costs ...........................................................7

        5. Remaining Funds .........................................................................7

    C. Notice and Settlement Administration....................................................7

    D. Opt-Out and Objection Procedures ........................................................8

    E. Release.......................................................................................................8

IV. ARGUMENT......................................................................................................9

    A. The Settlement Approval Process............................................................9

    B. The Settlement Merits Preliminary Approval .....................................10

        1. The Proposed Settlement Provides Substantial Relief to the Settlement Class, Particularly in Light of the Uncertainty of Prevailing on the Merits ..............................................................10

            a. Benefits to the Class .......................................................10

            b. The Strength of Plaintiff's Case.....................................11

        2. Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive ...................................................................................12

        3. The Settlement Resulted from Extensive, Arm's-Length Negotiations and Is Not the Result of Collusion....................13

        4. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval .............................14

    C. Plaintiff's Requested Fees Are Reasonable .........................................14

    D. The Requested Incentive Award Is Reasonable...................................15

    E. The Proposed Class Notice Satisfies Due Process ..............................15

**F.** **The Court Should Grant Class Certification for Settlement Purposes** ..........**17**

    **1.** **The Rule 23(a) Factors Are Met** ...................................................**18**

        **a.** **The Class Is Sufficiently Numerous, and Joinder Is Impracticable**..................................................................**18**

        **b.** **The Settlement Class Shares Many Common Issues of Law and Fact**........................................................................**19**

        **c.** **Plaintiff's Claims Are Typical of the Settlement Class** ...........**20**

        **d.** **Plaintiff and His Counsel Are Adequate Representatives**........**20**

    **2.** **The Rule 23(b)(3) Factors Are Satisfied** ................................................**21**

**G.** **Scheduling a Final Approval Hearing Is Appropriate** .....................................**22**

**V.** **CONCLUSION** ................................................................................................**23**

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*,
   No. 09-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ........................................................12

*Am. Int'l Grp., Inc. v. ACE INA Holdings*,
   Nos. 07-2898, 09-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) .................................9, 13

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................21, 22

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ............................................................................................9, 10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010)............................................................................................11

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014)......................................................................................20, 21

*Brown v. Nucor Corp.*,
   576 F.3d 149 (4th Cir. 2009) ................................................................................................20

*Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012).........................................................................................21, 22

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ........................................................................................21, 22

*In re Caribbean Cruise Line, Inc.*,
   2014 U.S. App. LEXIS 25084 (7th Cir. 2014) .....................................................................20

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ..............................................................................................15

*F.C.V., Inc. v. Sterling Nat'l Bank*,
   652 F. Supp. 2d 928 (N.D. Ill. 2009) ..............................................................................16, 17

*Gomez v. St. Vincent Health, Inc.*,
   649 F.3d 583 (7th Cir. 2011) ................................................................................................21

*Green v. Serv. Master*,
   No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ................................................12

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ........................................................................................ 18

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ....................................................................... 20

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .................................................................. 9, 10

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ....................................................................... 20

*Kleen Products LLC v. Int'l Paper*,
    306 F.R.D. 585 (N.D. Ill. 2015) ................................................................. 17

*Lightspeed Media Corp. v. Smith*,
    761 F.3d 699 (7th Cir. 2014) ....................................................................... 16

*Marcial v. Coronet Ins. Co.*,
    880 F.2d 954 (7th Cir. 1989) ....................................................................... 18

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*,
    834 F. 2d 677 (7th Cir. 1987) ..................................................................... 13

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ....................................................................... 17

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ....................................................................... 18

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ....................................................................... 20

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) ..................................................................... 18

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ....................................................................... 15

*Phillips Randolph Enters., LLC v. Rice Fields*,
    No. 06-4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007) ......................... 12

*Pruitt v. City of Chicago*,
    472 F.3d 925 (7th Cir. 2006) ....................................................................... 18

*Romero v. Dep't Stores Nat'l Bank*,
    199 F. Supp. 3d 1256 (S.D. Cal. 2016) ...................................................... 11

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ..................................................................20

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................13

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..............................................................................11

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ...............................................................18, 19

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...........................................................1, 10, 11

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ....................................................................14

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
    271 F.R.D. 668 (D. Wyo. 2011) ................................................................11

**Statutes**

47 U.S.C. § 227 .....................................................................................1, 2, 20

47 U.S.C. § 227(b)(1) ....................................................................................2

47 U.S.C. § 227(b)(3) ...............................................................................2, 19

47 U.S.C. § 227(c)(3) ....................................................................................2

47 U.S.C. § 227(c)(5) ...............................................................................2, 12

**Rules**

Fed. R. Civ. P. 23 .............................................................................16, 17, 18

Fed. R. Civ. P. 23(a) ......................................................................17, 18, 21

Fed. R. Civ. P. 23(a)(1) ...............................................................................19

Fed. R. Civ. P. 23(a)(2) ...............................................................................19

Fed. R. Civ. P. 23(a)(4) ...............................................................................20

Fed. R. Civ. P. 23(b) ...................................................................................17

Fed. R. Civ. P. 23(b)(3) ................................................................16, 17, 21

Fed. R. Civ. P. 23(e) ...........................................................................................................22

Fed. R. Civ. P. 23(e)(1) ......................................................................................................15

Fed. R. Civ. P. 23(e)(2) ........................................................................................................9

**Regulations**

47 C.F.R. § 64.1200(c)(2) ....................................................................................................2

47 C.F.R. § 64.1200(c)(2)(ii) ...............................................................................................3

47 C.F.R. §§ 64.1200(c)(2) and (e).......................................................................................2

**Other Authorities**

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)....................9, 13

*Manual for Complex Litig.* § 21.633 (4th ed. 2004) ..........................................................10, 15, 16

Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010) ....................................................18

## I.    INTRODUCTION

Plaintiff Ken Johansen, along with the Defendant Santanna Natural Gas Corporation d/b/a Santanna Energy Services ("Santanna" or "Defendant" and together with Plaintiff referred to as "the Parties") have reached a class action settlement of this matter (the "Settlement").[1] The Settlement includes the establishment of a $750,000 common fund to be distributed to 29,760 Settlement Class Members who file a valid claim after payment of notice and administration costs, class counsel fees, and an incentive award to the Plaintiff.[2] As part of the Settlement, Santanna has also agreed to cease its telemarketing activities. Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in records obtained in discovery and a website through which Claim Forms may be directly submitted.

In evaluating the fairness of a proposed class action settlement, the key consideration is the strength of the plaintiff's case on the merits balanced against the amount offered in the Settlement. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Although Plaintiff believes that he would ultimately prevail on the merits at trial, success is far from assured. At every turn of the litigation and in negotiations, Defendant has denied liability and vigorously defended its position. If approved, the Settlement will bring a sure end to what would be contentious and costly litigation centered on questions of whether Defendant is liable for the allegedly unlawful calls challenged in this action placed by an alleged agent of Santanna under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and regulations issued by the Federal Trade Commission.

---

[1] The non-opposition of Santanna is limited to not objecting to certification of the Settlement Class and approval of the Settlement. Santanna does not concede or admit to any of the factual or legal assertions of the Plaintiff.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Agr."), attached as Exhibit 1.

The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Class Counsel; (4) appoint Plaintiff as representative of the Settlement Class; (5) approve the proposed Notice Plan, Notice, and Claim Form; and (6) schedule the Final Approval Hearing and related dates as proposed.

## II.     NATURE AND BACKGROUND OF THE CASE

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry, as well as initiating any telephone solicitation to a cell phone using an Automatic Telephone Dialing System or using an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b)(1); 47 U.S.C. § 227(c)(3); 47 C.F.R. §§ 64.1200(c)(2) and (e).  A person who has received calls may bring suit for an alleged violation of the TCPA against the violator and seek statutory damages. 47 U.S.C. § 227(c)(5); 47 U.S.C. § 227(b)(3). The regulations exempt from liability a caller who has obtained the subscriber's signed, written

agreement to receive telephone solicitations from the caller.  47 C.F.R. § 64.1200(c)(2)(ii).  That agreement must also include the telephone number to which the calls may be placed.  *Id.*

## A.     THE LITIGATION AND SETTLEMENT NEGOTIATIONS

Santanna provides residential gas services to consumers in the United States. (*See* <u>Exhibit 2</u>, Declaration of Anthony Paronich ("Paronich Decl.") at ¶ 7.) To promote its services, Santanna uses telemarketing. (*Id.* at ¶ 8.) Santanna relies on third parties for its telemarketing. (*Id.* at ¶ 9.) One of these third parties included the third-party defendant Liberal United Marketing, Inc. a/k/a Liberal United Marketing C and P Inc. ("Liberal United Marketing") and Jacob T. Adigwe. (*Id.* at ¶ 10.)

The parties litigated this action for over a year before commencing settlement negotiations. In his initial Complaint, Plaintiff sued Santanna claiming that it had engaged in the unsolicited telemarketing directly to the Plaintiff. (Dkt. No. 1.) Santanna answered the Complaint, asserting eight affirmative defenses. (Dkt. No. 16.) Investigation by Plaintiff's counsel and discovery with the parties revealed that Liberal United Marketing and Jacob T. Adigwe had dialed the calls to the Plaintiff. Santanna filed a Third-Party Complaint against these entities. (Dkt. No. 26.)

The parties engaged in extensive first party discovery investigating Santanna's policies for TCPA compliance as well as their relationship with the third-party defendants relevant to a potential finding of vicarious liability. Aided by the filing of two motions to compel by the Plaintiff (Dkt. No. 35 and 45), Santanna produced more than 25,000 pages of discovery documents. (Paronich Decl. at ¶ 11.) On a parallel track, the Plaintiff pursued discovery designed to locate the calling records of Liberal United Marketing and Jacob T. Adigwe. (*Id.* at ¶ 12.) First, the Plaintiff served discovery directly on the third-party defendants. Those discovery requests were ignored. (*Id.* at ¶ 13.) One of the topics of the discovery was calling records related

3

to telemarketing calls placed for Santanna, and such calling records are crucial in TCPA class actions, which frequently fail without them. To pursue those calling records, the Plaintiff issued seven third-party subpoenas. (*Id.* at ¶ 14.) A series of subpoena responses, including the banking records of the third-party defendants, revealed payments to a company that provides automated telemarketing system capabilities, XenCall. (*Id.* at ¶ 15.) XenCall is located in Ontario, Canada. (*Id.* at ¶ 16.) The Plaintiff then pursued records from XenCall of the third-party defendants calling records. (*Id.* at ¶ 17.) After several conversations, XenCall provided more than 20,000 pages of documents, including the telemarketing activities of the third-party defendants. XenCall then provided an affidavit regarding the capabilities of the dialing system as well a statement that the documents were the business records of XenCall. (*Id.* at ¶ 18.)

With the records of the calling of the third-party defendants obtained, the Plaintiff engaged an expert, Anya Verkhovskaya of Class Experts Group LLC, to analyze the calling data to identify which calls were made to cellular telephones and which calls were made to numbers on the National Do Not Call Registry. Ms. Verkhovskaya's supplemental expert report is attached as Exhibit 3,[3] and below is her explanation of that process:

> My analysis for the Supplemental Report excluded records: (a) without a complete 10-digit telephone number; (b) with area codes for toll-free telephone numbers or area codes not between 201-989; (c) identified as duplicate records; and which did not (d) have an Illinois area code with call(s) from March 8, 2016 through May 5, 2017 or a Michigan area code with call(s) from August 11, 2016 through October 28, 2016, or an Ohio area code with call(s) from April 4, 2016 through May 12, 2017 (the "August Qualified Calls").

> Attached hereto as Exhibit A is listing of the 26,575 identified Residential NDNCR Numbers, including earlier- and recently-identified records…The exhibit also includes name and address identification information obtained through LexisNexis.

---

[3] The report of Ms. Verkhovskaya has hundreds of pages of exhibits, which have been intentionally omitted. The Plaintiff is willing to provide that information at the Court's request.

> Attached hereto as Exhibit B is a listing of the 3,185 wireless-identified telephone numbers, including earlier- and recently-identified records…The exhibit also includes name and address identification information obtained through LexisNexis.

(*Id.* at ¶ 7, 9, 11.)

On July 26, 2018, the parties mediated before Hon. Morton Denlow (Ret.). (Paronich Decl. at ¶ 19.) Judge Denlow has extensive experience mediating TCPA cases, including cases involving vicarious liability allegations like this one. (Paronich Decl. ¶ 20.) Judge Denlow challenged Plaintiff's counsel on the strength of Plaintiff's vicarious liability theory and emphasized the risk Plaintiff faced if he continued to pursue the litigation. (*Id.* ¶ 21.) The parties exchanged proposals and counterproposals and at the end of the day reached an agreement in principle, but it took several additional weeks to finalize the details of the Settlement Agreement. (*Id.* ¶ 22.)

## III.    THE PROPOSED SETTLEMENT

### A.    THE SETTLEMENT CLASS

The proposed Settlement would establish a "Settlement Class" for settlement purposes only, defined as:

> All persons within the United States identified in the supplemental expert report of Anya Verkhovskaya to whom Defendant, through a third party, initiated a telephone call from March 8, 2016 through May 12, 2017 to either (a) a cellular telephone number or (b) a number on the National Do Not Call Registry.

(Agr. ¶ 1.35.)

### B.    SETTLEMENT RELIEF

#### 1.    Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $750,000 Settlement Fund, which will be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses (estimated to not exceed $50,000); (3) court-approved

attorney's fees of up to one-third of the total amount of the Settlement Fund, in addition to out of pocket expenses; and (4) a court-approved incentive award to the Class Representative of up to $10,000. (Agr. ¶ 1.38.)

Each Settlement Class Member who submits a valid claim shall be entitled to receive an equal amount of the common fund. (Agr. ¶ 3.3(a).) If all the attorneys' fees, expenses, incentive award, and Administration Expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment would be approximately $150. (Paronich Decl. ¶ 23.) The Settlement provides for a potential second distribution for any funds remaining due to uncashed settlement distribution checks to those Settlement Class Members that cashed their first distribution checks, to the extent administratively feasible.[4] (Agr. ¶ 3.3(b).)

**2.      Class Member Relief: Remedial Measures**

As part of the proposed Settlement, the Defendant has also agreed to cease its telemarketing activities. (Agr. ¶ 3.2.) This process will provide Settlement Class Members (and the public) with further relief.

**3.      Class Representative Incentive Award**

If approved by the Court, the Plaintiff will receive an incentive award of $10,000 from the Settlement Fund, in lieu of any payments on claims to which he might otherwise be entitled as a Settlement Class Member under the Settlement. (Agr. ¶ 13.2.) This award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case.

---

[4] If distribution of any amounts remaining from uncashed checks is administratively infeasible, then that amount will instead be distributed to a Court-approved *cy pres* recipient. Agr. ¶ 3.3(b). The Parties propose the National Consumer Law Center as the designated *cy pres* recipient. Agr. ¶ 1.14.

### 4. Attorneys' Fees and Costs

Well before the expiration of time for Settlement Class Members to file objections, Class Counsel will apply to the Court for an award of attorneys' fees in the amount of up to one-third of the total amount of the Settlement Fund, in addition to out of pocket expenses. (Agr. ¶ 13.1.) As Class Counsel will address in their fee application, an award of attorneys' fees and costs will compensate Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

### 5. Remaining Funds

Any amount remaining in the Settlement Fund after paying all Approved Claims, Settlement Administration Expenses, and any Fee Award and incentive award will be distributed to a Court-approved *cy pres* recipient. The Parties propose National Consumer Law Center. (Agr. ¶ 1.14.) This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible. (Agr. ¶ 3.3(b).)

## C. NOTICE AND SETTLEMENT ADMINISTRATION

All Settlement Administration Expenses will be paid from the Settlement Fund. (Agr. ¶ 1.33.) The Parties have agreed upon, and propose that the Court approve, the nationally-recognized class action administration firm Kurtzman Carson Consultants LLC to be the Settlement Administrator (Agr. ¶ 1.34) and to implement the Notice Plan and administer the Settlement, subject to review by counsel. The Settlement Administrator's duties will include: (1) sending Notice to the Settlement Class pursuant to the Notice Plan; (2) responding to inquiries regarding the process from persons in the Settlement Class; (3) processing and evaluating claim forms, opt-outs, and objections, and (4) issuing settlement payments.

7

The Settlement Administrator will send postcard notice via the U.S. Postal Service – substantially in the form attached as Exhibit 3 to the Settlement Agreement – to the names and addresses of Settlement Class Members identified through the calling data obtained in discovery and analyzed by the Plaintiff's expert, the "Class List." (Agr. ¶ 6.2(a).) The Settlement Administrator will also attempt to identify name and address information for any Settlement Class Member phone number that was not available in discovery, which is done through the use of third party data vendors. *Id.* The Settlement Administrator will administer a Settlement Website, through which Settlement Class Members will be able to submit Claim Forms and obtain further details and information about the Settlement. (Agr. ¶ 6.2(b).)

**D.      OPT-OUT AND OBJECTION PROCEDURES**

Persons in the Settlement Class will have the opportunity to exclude themselves from the Settlement or object to its approval. (Agr. ¶¶ 12.1-12.2.) The procedures and deadlines for filing opt-out requests and objections will be conspicuously listed in the Notices and on the Settlement Website. (*See* Agr. at Ex. 2-3.) The Notice informs Settlement Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing. (*Id.*) The Notice also informs Settlement Class Members that they will be bound by the release contained in the Settlement Agreement unless they timely exercise their opt-out right. (*Id.*)

**E.      RELEASE**

The release is appropriately tailored to this case involving alleged violations similar to those alleged and is limited to the Class List, which is compiled of calling data exchanged in discovery. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendant from all claims against the Released Parties, arising out of Santanna's telemarketing activities. (Agr. ¶ 5.1.)

## IV. ARGUMENT

### A. THE SETTLEMENT APPROVAL PROCESS

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980) (noting that "[i]n the class action context in particular there is an overriding public interest in favor of settlement") (citations, quotations, and internal marks omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). The traditional means for handling claims like those at issue here – individual litigation – would unduly tax the court system, would require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it "is the product of arm's-length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Newberg § 11.41; *Am. Int'l Grp., Inc. v. ACE INA Holdings*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal citation omitted).

Approval of a class action settlement is a two-step process. *Armstrong*, 616 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls "within a range of possible approval" and therefore warrants dissemination of notice apprising class members of the proposed settlement. *Id.* If the Court preliminarily approves the class action settlement, it then proceeds to the second step in the review process – the fairness hearing. *Id.*; Manual for Complex Litig. § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. To evaluate fairness at the preliminary approval stage, courts consider the following factors: (1) the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length, and expense of the litigation; (3) the presence of collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc.*, 463 F.3d at 653; *see also Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199.

As set forth in the following, the Settlement here warrants preliminary approval so that persons in the Settlement Class can be notified of the Settlement and provided an opportunity to voice approval or opposition.

**B.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

**1.     The Proposed Settlement Provides Substantial Relief to the Settlement Class, Particularly in Light of the Uncertainty of Prevailing on the Merits**

**a.     Benefits to the Class**

"The most important factor relevant to the fairness of a class action settlement is the first one on the list: the strength of the Plaintiff's case on the merits balanced against the amount

offered in the settlement." *Synfuel Techs., Inc.*, 463 F.3d at 653. Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiff." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

The Settlement Agreement requires Defendant to pay $750,000 into a fund out of which Settlement Class Members will receive a cash payment. Although the precise amount of each Settlement Class Member's award cannot be determined until all claims have been submitted, Plaintiff estimates that the average payment will be $150. Without the Settlement, the certified class ran the very real risk of recovering nothing, and even in the event of judgment, recovery against Defendant was far from certain.

### b.    The Strength of Plaintiff's Case

Plaintiff continues to believe that his claims against Defendant have merit and that he could make a compelling case if his claims were tried. Nevertheless, Plaintiff's claims would face several difficult challenges if the litigation were to continue.

First, the possibility of summary dismissal of this class was also tangible following the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Some post-*Spokeo* courts have held that a plaintiff who has received an unsolicited call in violation of the TCPA, without more, has not alleged a sufficient Article III harm. *See, e.g., Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016) ("One singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.").

Class certification is also far from automatic in TCPA cases. *Compare Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify

TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), *with Green v. Serv. Master*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.").

Even if a class was certified, it faced an uncertain fate. The TCPA's statutory damages provision for Do Not Call violations allows for damages of "up to $500 per call." *See* 47 U.S.C. § 227(c)(5). So, after a trial, the jury could award each DNC class member $1 (or less) for the illegal telephone calls received.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards – even after a plaintiff has prevailed on the merits – on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case – between $100 and $1,000 per violation – would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

### 2. Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the Parties have nearly concluded discovery, extensive motion work, including finishing the briefing of class certification and motions for summary judgment, remains. Realistically, it could be more

than a year before the case would proceed to trial. The appeals process may further delay any judgment in favor of Settlement Class Members. The Settlement avoids these risks and provides immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. The Settlement Resulted from Extensive, Arm's-Length Negotiations and Is Not the Result of Collusion

The requirement that a settlement be fair is designed to prevent collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. Newberg, *supra*, § 11:42; *see also Am. Int'l Grp.*, 2012 WL 651727, at *10.

Here, the proposed Settlement was negotiated after a failed full-day mediation session with Hon. Morton Denlow (Ret.) and only effectuated after significant back-and-forth between the Parties. Plaintiff's counsel are particularly experienced in the litigation of nationwide class action cases, particularly under the TCPA, as are Defendant's counsel. (*See* Declaration of Edward Broderick ("Broderick Decl."), attached as Exhibit 4, ¶ 8; Declaration of Brian Murphy ("Murphy Decl."), attached as Exhibit 5, ¶ 6; Declaration of Matthew McCue ("McCue Decl."), attached as Exhibit 6, ¶ 9; Paronich Decl. ¶ 4.) In negotiating this Settlement, Plaintiff's counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case. *Id.* The fact that Plaintiff achieved an excellent result for the Settlement Class despite facing significant procedural and substantive hurdles raised by skilled defense counsel is a testament to the non-collusive nature of the Settlement.

13

### 4. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

As outlined above, the Parties have engaged in substantial, substantive discovery, permitting a thorough analysis of the factual and legal issues involved in this matter. Settlement negotiations have been prolonged and hard-fought. Before the mediations with Judge Denlow, the Parties provided extensive written analyses of the factual and legal issues involved with the case. Counsel's thorough legal and factual analyses – including based on substantial discovery and the use of a consulting expert – informed the Settlement.

## C. PLAINTIFF'S REQUESTED FEES ARE REASONABLE

Plaintiff's counsel seek an award not to exceed one-third of the total settlement fund to compensate counsel for reasonable fees associated with this action. (Agr. ¶ 13.1.) Additionally, counsel for the Plaintiff will be applying for reimbursement of the actual costs expended in litigating this matter. (*Id.*) The requested fee is reasonable under the circumstances of this case. In the Seventh Circuit, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (citing cases).

Plaintiff's counsel have achieved an excellent result for the Settlement Class. The Settlement creates a non-reversionary Settlement Fund of $750,000, affording Settlement Class Members direct monetary relief and an agreement by Santanna to cease its telemarketing activities. Although Plaintiff's counsel were confident in the ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering Defendant's substantial opposition and the complexity of the issues involved. Because putative Class Counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, counsel faced substantial risk. Finally, the fee is in line with those deemed reasonable in the

14

Seventh Circuit. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) ("[A]ttorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.").

Prior to both final approval and well before the objection deadline, Plaintiff's counsel will file a separate motion for an award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request considering all of the relevant facts.

## D. THE REQUESTED INCENTIVE AWARD IS REASONABLE

Incentive awards for class representatives like the one requested here are appropriate. Such awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive award of $25,000); *see also* Manual for Complex Litig. § 21.62, n.971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). Such awards are generally proportional to the representative's losses or claims and can range from several hundred dollars to many thousands of dollars.

Here, Plaintiff's requested incentive award of not more than $10,000 is appropriate. Unlike unnamed persons in the Settlement Class, who will enjoy the benefits of the Class Representative's efforts without taking any personal action, Plaintiff exposed himself to investigation and committed himself to all the rigors of litigation in the event the case did not settle.

## E. THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* Manual for Complex Litig., *supra*, at § 21.312. The best practicable notice is that which is

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed Notice, attached as Exhibits 2-3 to the Settlement Agreement, satisfies all of the above criteria. The Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement. The Notice therefore satisfies the requirements of Rule 23. *See F.C.V., Inc. v. Sterling Nat'l Bank*, 652 F. Supp. 2d 928, 944 (N.D. Ill. 2009) (Rule 23(b)(3) class) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)) (explaining that a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Settlement Agreement provides for direct notice via U.S. Mail to all addresses for all

16

Class Members contained in the Class List obtained through discovery, and the Settlement Administrator will attempt to identify the name and address for any phone number in the Class List that does not have a name and address. To supplement this postcard notice, the Settlement Agreement provides for the creation of a Settlement Website where Settlement Class Members may obtain additional relevant information about the Settlement and submit Claim Forms. (Agr. ¶ 6.2(a)-(b).) Furthermore, Settlement Class Members will have the opportunity to request a paper claim form that is mailed to them at no expense to the Settlement Class Member if they do not want to submit their claim form online. *See* Exhibit 3 to the Settlement Agreement.

This Notice Plan satisfies due process, especially because Rule 23 does not require that each potential class member receive actual notice of the class action. A court must simply make certain that class members receive "the best practicable notice that is: 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *F.C.V.*, 652 F. Supp. 2d at 944 (Rule 23(b)(3) class) (quoting *Shutts*, 472 U.S. at 808). The Notice Plan constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23.

## F. THE COURT SHOULD GRANT CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

Class certification is proper if Plaintiff satisfies the requirements of Rule 23(a) and one of the prongs of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires Plaintiff to establish "'numerosity, commonality, typicality, and adequacy of representation.'" *Kleen Products LLC v. Int'l Paper*, 306 F.R.D. 585, 589 (N.D. Ill. 2015) (quoting *Messner*, 669 F.3d at 811). In this case, Plaintiff seeks certification under Rule 23(b)(3), which "requires the court to find[ ] that the questions of law or fact common to class

17

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting the Rule) (internal quotation marks omitted).

The purpose of Rule 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there would be none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, et al., 7A Fed. Practice & Proc. § 1751 (3d ed. 2010). In class actions such as this one, the alternative to certification is reaping the benefits of illegal calls with impunity. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015).

    1.    **The Rule 23(a) Factors Are Met**

        a.    **The Class Is Sufficiently Numerous, and Joinder Is Impracticable**

A plaintiff does not need to "specify the exact number of persons in the class, … but cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (internal citations omitted). The Seventh Circuit has implied that even a class of forty may be sufficient to warrant class certification. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006) (noting that "[s]ometimes 'even' 40 Plaintiff would be unmanageable"). Numerosity is determined prior to any consideration of whether a particular class member has a valid claim. *See Parko v. Shell Oil Co.,* 739 F.3d 1083, 1084 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.") (emphasis in original).

In this case, there are nearly 30,000 Settlement Class Members. This more than establishes that "joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied.

### b. The Settlement Class Shares Many Common Issues of Law and Fact

"One of the requirements for a class action in federal court is the existence of 'questions of law or fact common to the class.'" *Suchanek*, 764 F.3d at 755 (quoting Fed. R. Civ. P. 23(a)(2)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* at 756 (citing *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010)). "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Id.* at 755 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Here, every Class Member's claims arise from the same common nucleus of operative facts: Santanna products were offered to them through telemarketing done by a third party. Similarly, every Class Member has an interest in the same overarching question of law, *i.e.*, whether Defendant violated the TCPA through this conduct. On these issues alone, a class is appropriate. Additionally, common questions of law and fact include:

- Did Santanna have consent of call recipients to make the calls challenged in this case?
- If there were violations of the TCPA by Defendant, were those violations knowing or willful, such that treble damages are appropriate under 47 U.S.C. § 227(b)(3)?

These questions are dispositive, apply equally to all class members, and, importantly, can be *answered* using common proof and uniform legal analysis. Further, the uniformity of the applicable law – the federal TCPA – distinguishes this case from putative nationwide class actions requiring application of multiple states' laws. The commonality requirement is therefore

19

met. As the Seventh Circuit recently stated, "[c]lass certification is normal in litigation under §

227, because the main questions … are common to all recipients." *Ira Holtzman, C.P.A., &*

*Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

### c. Plaintiff's Claims Are Typical of the Settlement Class

As with commonality, the threshold requirement for typicality is "not high." *See Brown v.*

*Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). Typicality means that the plaintiff's claims

"arise[] from the same event or practice or course of conduct that gives rise to the claims of the

other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis*,

963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). This component is usually satisfied

where "Defendant has engaged in standardized conduct towards members of the proposed class."

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). However, typicality does not require that the

representative's claims be identical to every other member of the class. *See Oshana v. Coca-Cola*

*Co.,* 472 F.3d 506, 514 (7th Cir. 2006) (noting that "factual variations may not defeat

typicality").

Here, the Plaintiff satisfies the typicality requirement because his interests are sufficiently

aligned with those of the class. Like all Class Members, the Plaintiff received telemarketing calls

promoting Santanna's services. He seeks the same relief as the class and is not subject to unique

defenses.

### d. Plaintiff and His Counsel Are Adequate Representatives

"Rule 23(a)(4) requires that the named Plaintiff and class counsel 'will fairly and

adequately protect the interests of the class.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302

F.R.D. 240, 252 (N.D. Ill. 2014), petition denied by *In re Caribbean Cruise Line, Inc*., 2014 U.S.

App. LEXIS 25084 (7th Cir. 2014) (quoting the Rule). In adequacy analysis, the Court considers

"the adequacy of the named Plaintiff as representatives of the proposed class's myriad members,

with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). While the Supreme Court has noted that adequacy and typicality analysis "tend [ ] to merge," *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997), courts have rejected proposed class representatives due to "conflicts of interest" or "serious credibility problems," *Birchmeier*, 302 F.R.D. at 252 (internal quotation marks and citations omitted).

Here, the Plaintiff has no conflicting interests with Class Members. In fact, by investigating, documenting, filing, and prosecuting this action, the Plaintiff has demonstrated a desire and ability to protect Class Members' interests. There is nothing to suggest that the Plaintiff has any interest antagonistic to the vigorous pursuit of the class claims against the Defendant. Rather, his interests are perfectly aligned with those of Class Members. In addition, putative Class Counsel are practitioners with substantial experience in consumer and class action litigation, including cases under the TCPA like this one. The requirements of Rule 23(a), therefore, are satisfied.

## 2. The Rule 23(b)(3) Factors Are Satisfied

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Windsor*, 521 U.S. at 623). Predominance is satisfied so long as individual issues do not "overwhelm" common issues. *Id.* (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)). Common issues predominate here because the central liability question – *i.e.*, whether the calls were made in violation of the TCPA – can be established through generalized evidence. Predominance is "readily met" in certain consumer cases. *Windsor*, 521 U.S. at 625. The touchstone for predominance analysis in the Seventh Circuit is efficiency. *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds* 133 S. Ct. 2768 (2013),

21

*judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"), *cert. denied* 134 S. Ct. 1277

(2014). "[T]he requirement of predominance is not satisfied if 'individual questions ...

overwhelm questions common to the class.'" *Butler II,* 727 F.3d at 801 (quoting *Amgen,* 133 S.

Ct. at 1196).

     Because the claims are being certified for purposes of settlement, there are no issues with

manageability. *Windsor*, 521 U.S. at 620 ("Confronted with a request for settlement-only

certification, a district court need not inquire whether the case, if tried, would present intractable

management problems … for the proposal is that there be no trial."). Additionally, resolution of

tens of thousands of claims in one action is far superior to individual lawsuits and promotes

consistency and efficiency of adjudication. *See Butler*, 727 F.3d at 801 (noting that "the more

claimants there are, the more likely a class action is to yield substantial economies in litigation")

(quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). Thus,

certification for purposes of settlement is appropriate.

## G.    SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE

     The last step in the settlement approval process is a final approval hearing at which the

Court may hear all evidence and argument necessary to make its settlement evaluation.

Proponents of the Settlement may explain the terms and conditions of the Settlement Agreement

and offer argument in support of final approval. The Court will determine after the Final

Approval Hearing whether the Settlement should be approved, and whether to enter a final order

and judgment under Rule 23(e). Plaintiff requests that the Court set a date for a hearing on final

approval at the Court's convenience, but no earlier than 100 days after the preliminary approval

order is entered, and schedule further settlement proceedings pursuant to the schedule set forth

below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 21 days following entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | Within 30 days following entry of Preliminary Approval Order |
| Exclusion/Objection/ Claim Deadline | 60 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing Date | No earlier than 100 days following entry of Preliminary Approval Order |

## V.    CONCLUSION

The proposed class action Settlement is fair, reasonable, adequate, and well within the

permissible range of possible judicial approval. It should, therefore, be approved in all respects.

Respectfully submitted,

PLAINTIFF,
individually and on behalf of a class of all persons
and entities similarly situated

Dated: August 23, 2018            By:   /s/ *Anthony I. Paronich*
                                        Edward A. Broderick
                                        Email: ted@broderick-law.com
                                        Anthony I. Paronich
                                        Email: anthony@broderick-law.com
                                        BRODERICK & PARONICH, P.C.
                                        99 High Street, Suite 304
                                        Boston, Massachusetts 02110
                                        Telephone: (617) 738-7080

                                        Brian K. Murphy
                                        MURRAY MURPHY MOUL + BASIL LLP
                                        1114 Dublin Road
                                        Columbus, OH 43215

Telephone: (614) 488-0400
Facsimile: (614) 488-0401
murphy@mmmb.com

Matthew P. McCue
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2018, I electronically filed the foregoing with the

Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all

counsel of record.

  /s/ *Anthony I. Paronich*
            Anthony I. Paronich