# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEN JOHANSEN on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>SANTANNA NATURAL GAS COPORATION, dba SANTANNA ENERGY SERVICES,<br><br>    Defendant, Third-Party Plaintiff<br><br>v.<br><br>LIBERAL UNTIED MARKETING, INC. a/k/a LIBERAL UNITED MARKETING C AND P INC. and JACOB T. ADIGWE,<br><br>    Third-Party Defendant.<br>_____/ | Case No. 1:17-cv-03604<br><br>Honorable John Z. Lee |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**<u>FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1
II. CASE BACKGROUND AND SETTLEMENT ...................................................................2
III. THE COURT'S PRELIMINARY APPROVAL ORDER .....................................................5
IV. FINAL APPROVAL SHOULD BE GRANTED .................................................................6
    A. THE SETTLEMENT IS THE RESULT OF INFORMED, ARM'S-LENGTH NEGOTIATIONS. ........................................................................6
    B. Settlement Class Members Received the Best Notice Practicable. ....................7
    C. The Settlement Satisfies the Criteria for Final Approval ...................................9
        1. The Strength of Plaintiff's Case Compared to the Amount of the Settlement .......................................................................................9
        2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation ....................................................................................12
        3. Lack of Opposition to the Settlement .........................................................13
        4. The Opinion of Counsel ..............................................................................13
        5. The Extent of Discovery Completed and the Stage of the Proceedings ......13
V. CONCLUSION ....................................................................................................................14

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. AllianceOne Receivables Mgt., Inc.*,
  No. 3:08-cv-00248 (S.D. Cal.) ................................................................................................ 11

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*,
  No. 09-910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) .......................................................... 11

*Am. Int'l Grp., Inc. v. ACE INA Holdings*,
  Nos. 07-2898, 09-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ........................................ 6

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ..................................................................................................... 9

*Arthur v. Sallie Mae, Inc.*,
  No. 2:10-cv-00198 (W.D. Wash.) ............................................................................................ 11

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 350 (N.D. Ill. 2010) ............................................................................................... 13

*Bayat v. Bank of the West*,
  No. 13-cv-2376 (N.D. Cal.) ..................................................................................................... 11

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................................................... 11

*Couser v. Comenity Bank*,
  No. 12-cv-2484 (S.D. Cal.) ...................................................................................................... 11

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ................................................................................................... 13

*Franklin v. Wells Fargo Bank*,
  No. 14-cv-2349 (S.D. Cal.) ...................................................................................................... 11

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................................... 11

*Green v. Serv. Master*,
  No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ................................................. 10

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ............................................................................................ 6, 9, 13

*Jones v. Royal Admin. Servs. Inc.*,
 887 F.3d 443 (9th Cir. 2018) ....................................................................................................10

*Kazemi v. Payless ShoeSource, Inc.*,
 No. 3:09-cv-05143 (N.D. Cal.) ..................................................................................................11

*Kramer v. Autobytel, Inc.*,
 No. 4:10-cv-02722 (N.D. Cal.) ..................................................................................................12

*Kristensen v. Credit Payment Servs.*,
 879 F.3d 1010 (9th Cir. Jan. 10, 2018) ......................................................................................10

*Kwan v. Clearwire Corp.*,
 No. 2:09-cv-01392 (W.D. Wash.)..............................................................................................12

*Lushe v. Verengo*,
 No. 13-cv-07632 AB (C.D. Cal.) ...............................................................................................12

*Malta v. Freddie Mac & Wells Fargo Home Mtg.*,
 No. 3:10-cv-01290 (S.D. Cal.) ...................................................................................................12

*Mangone v. First USA Bank*,
 206 F.R.D. 222 (S.D. Ill. 2001) ..................................................................................................13

*Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*,
 834 F. 2d 677 (7th Cir. 1987) ......................................................................................................6

*In re Mexico Money Transfer Litig.*,
 164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................................................12, 13

*Phillips Randolph Enters., LLC v. Rice Fields*,
 No. 06-4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007).........................................................11

*Romero v. Dep't Stores Nat'l Bank*,
 199 F. Supp. 3d 1256 (S.D. Cal. 2016)......................................................................................10

*Sarabri v. Weltman, Weinberg & Reis Co.*,
 L.P.A. No. 3:10-cv-01777-AJB-NLS (S.D. Cal.) ......................................................................12

*Smith v. State Farm Mut. Auto. Ins. Co.*,
 No. 13 C 2018, 2013 U.S. Dist. LEXIS 135230 (N.D. Ill. Sep. 23, 2013) ...............................10

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)...............................................................................................................10

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
 463 F.3d 646 (7th Cir. 2006) .......................................................................................................9

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
 309 F.3d 978 (7th Cir. 2009) ...................................................................................................6

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
 271 F.R.D. 668 (D. Wyo. 2011) .............................................................................................10

*Wong v. Accretive Health, Inc.*,
 773 F.3d 859 (7th Cir. 2014) ...................................................................................................7

**Statutes**

28 U.S.C. § 1711, *et seq.*..............................................................................................................1, 8

28 U.S.C. § 1715(a)(2)...................................................................................................................1, 8

47 U.S.C. § 227(b)(1) .......................................................................................................................3

47 U.S.C. § 227(b)(3) .......................................................................................................................3

47 U.S.C. § 227(c)(3).......................................................................................................................3

47 U.S.C. § 227(c)(5)..................................................................................................................3, 10

47 U.S.C § 227, *et seq.*............................................................................................................ passim

**Rules**

Fed. R. Civ. P. 23....................................................................................................................1, 5, 6, 9

**Regulations**

47 C.F.R. § 64.1200(c)(2).............................................................................................................2, 3

47 C.F.R. § 64.1200(c)(2)(ii) ...........................................................................................................3

47 C.F.R. § 64.1200(e).....................................................................................................................3

**Other Authorities**

H. Newberg & A. Conte, *Newberg on Class Actions* § 11:41 (4th ed. 2002) ................................6

Manual for Complex Litigation (Fourth) § 21.61 (2010) ................................................................6

## I. INTRODUCTION

On May 30, 2018, this Court preliminarily approved a proposed class action settlement between Plaintiff Ken Johansen and Defendant Santanna Natural Gas Corporation d/b/a Santanna Energy Services ("Santanna") (collectively, "the Parties"). (ECF No. 61). The Settlement creates an $750,000 non-reversionary common fund for the benefit of 29,760 consumers whose telephone numbers third-party defendant Liberal Untied Marketing, Inc. called on behalf of Santanna using an automatic telephone dialing system or while they were on the National Do Not Call Registry in alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1]

As directed by the Court, notice has been completed through postcards mailed directly to Settlement Class Members identified in records obtained in discovery and a website through which Claim Forms were submitted. In its opinion preliminarily approving the Settlement, the Court found that the settlement met all the requirements of Rule 23 of the Federal Rules of Civil Procedure and deserved preliminary approval. *See* ECF No. 61.

Now, following compliance with the notice regime submitted by the parties and ordered by this Court, including direct notice to the class, Plaintiff requests that the Court grant final approval of the Settlement. As a result of the straightforward settlement and administration, which is designed to maximize participation, the response from the Settlement Class has been overwhelmingly positive. In fact, there were *no objections* to any aspect of the settlement agreement by class members or by any government entity that received notice pursuant to the Class Action Fairness Act of 2005. *See* 28 U.S.C. § 1715(a)(2). The payout to the 1,950 eligible claimants identified is $198.90. *See* Declaration of Andrew Perry of KCC at ¶ 14 ("Perry Dec."),

---

[1] All capitalized terms have the same definition as they do in the Parties' Settlement Agreement.

attached hereto as Exhibit 1. Although Plaintiff believes that he would ultimately prevail on the merits at trial, success is far from assured. At every turn of the litigation and in negotiations, Defendant has denied liability and vigorously defended their position. If approved, the Settlement will bring a sure end to what would be contentious and costly litigation centered on the question of if it is liable for the allegedly unlawful calls challenged in this action placed by their vendor.

*Plaintiff's Motion for Award of Attorney's Fees, Costs and Incentive Award* (ECF No. 70) addresses the appropriateness of the requested attorneys' fees and expenses as well as the requested incentive award for the Class Representative and is incorporated herein. The Settlement is fair, adequate, and reasonable, and is in the best interests of the Settlement Class. Accordingly, Plaintiff respectfully requests that the Court enter the proposed order granting final approval attached hereto as Exhibit 2.

## II. CASE BACKGROUND AND SETTLEMENT

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry, as well as initiating any telephone solicitation to a cell phone using an Automatic Telephone Dialing System or using an artificial or

prerecorded voice. *See* 47 U.S.C. § 227(b)(1); 47 U.S.C. § 227(c)(3); 47 C.F.R. §§ 64.1200(c)(2) and (e). A person who has received calls may bring suit for an alleged violation of the TCPA against the violator and seek statutory damages. 47 U.S.C. § 227(c)(5); 47 U.S.C. § 227(b)(3). The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

Santanna provides residential gas services to consumers in the United States. (*See* ECF No. 56-2, Declaration of Anthony Paronich ("Paronich Decl.") at ¶ 7.) To promote its services, Santanna uses telemarketing. (*Id.* at ¶ 8.) Santanna relies on third parties for its telemarketing. (*Id.* at ¶ 9.) One of these third parties included the third-party defendant Liberal United Marketing, Inc. a/k/a Liberal United Marketing C and P Inc. ("Liberal United Marketing") and Jacob T. Adigwe. (*Id.* at ¶ 10.)

The parties litigated this action for over a year before commencing settlement negotiations. In his initial Complaint, Plaintiff sued Santanna claiming that it had engaged in the unsolicited telemarketing directly to the Plaintiff. (Dkt. No. 1.) Santanna answered the Complaint, asserting eight affirmative defenses. (Dkt. No. 16.) Investigation by Plaintiff's counsel and discovery with the parties revealed that Liberal United Marketing and Jacob T. Adigwe had dialed the calls to the Plaintiff. Santanna filed a Third-Party Complaint against these entities. (Dkt. No. 26.)

The parties engaged in extensive first party discovery investigating Santanna's policies for TCPA compliance as well as their relationship with the third-party defendants relevant to a potential finding of vicarious liability. Aided by the filing of two motions to compel by the Plaintiff (Dkt. No. 35 and 45), Santanna produced more than 25,000 pages of discovery

documents. (Paronich Decl. at ¶ 11.) On a parallel track, the Plaintiff pursued discovery designed to locate the calling records of Liberal United Marketing and Jacob T. Adigwe. (*Id.* at ¶ 12.) First, the Plaintiff served discovery directly on the third-party defendants. Those discovery requests were ignored. (*Id*. at ¶ 13.) One of the topics of the discovery was calling records related to telemarketing calls placed for Santanna, and such calling records are crucial in TCPA class actions, which frequently fail without them. To pursue those calling records, the Plaintiff issued seven third-party subpoenas. (*Id.* at ¶ 14.) A series of subpoena responses, including the banking records of the third-party defendants, revealed payments to a company that provides automated telemarketing system capabilities, XenCall. (*Id.* at ¶ 15.) XenCall is located in Ontario, Canada. (*Id.* at ¶ 16.) The Plaintiff then pursued records from XenCall of the third-party defendants calling records. (*Id.* at ¶ 17.) After several conversations, XenCall provided more than 20,000 pages of documents, including the telemarketing activities of the third-party defendants. XenCall then provided an affidavit regarding the capabilities of the dialing system as well a statement that the documents were the business records of XenCall. (*Id.* at ¶ 18.)

With the records of the calling of the third-party defendants obtained, the Plaintiff engaged an expert, Anya Verkhovskaya of Class Experts Group LLC, to analyze the calling data to identify which calls were made to cellular telephones and which calls were made to numbers on the National Do Not Call Registry. Ms. Verkhovskaya's supplemental expert report provided her explanation of that process:

> My analysis for the Supplemental Report excluded records: (a) without a complete 10-digit telephone number; (b) with area codes for toll-free telephone numbers or area codes not between 201-989; (c) identified as duplicate records; and which did not (d) have an Illinois area code with call(s) from March 8, 2016 through May 5, 2017 or a Michigan area code with call(s) from August 11, 2016 through October 28, 2016, or an Ohio area code with call(s) from April 4, 2016 through May 12, 2017 (the "August Qualified Calls").

4

>Attached hereto as Exhibit A is listing of the 26,575 identified Residential NDNCR Numbers, including earlier- and recently-identified records…The exhibit also includes name and address identification information obtained through LexisNexis.
>
>Attached hereto as Exhibit B is a listing of the 3,185 wireless-identified telephone numbers, including earlier- and recently-identified records…The exhibit also includes name and address identification information obtained through LexisNexis.

*See* ECF No. 56-3 at ¶ 7, 9, 11.)

On July 26, 2018, the parties mediated before Hon. Morton Denlow (Ret.). (Paronich Decl. at ¶ 19.) Judge Denlow has extensive experience mediating TCPA cases, including cases involving vicarious liability allegations like this one. (Paronich Decl. ¶ 20.) Judge Denlow challenged Plaintiff's counsel on the strength of Plaintiff's vicarious liability theory and emphasized the risk Plaintiff faced if he continued to pursue the litigation. (*Id.* ¶ 21.) The parties exchanged proposals and counterproposals and at the end of the day reached an agreement in principle, but it took several additional weeks to finalize the details of the Settlement Agreement. (*Id.* ¶ 22.)

### III. THE COURT'S PRELIMINARY APPROVAL ORDER

On August 30, 2018 this Court entered a preliminary approval Order. *See* ECF No. 61. In that Order, the Court found that the Settlement met all the requirements of Rule 23 of the Federal Rules of Civil Procedure and deserved preliminary approval. *Id*. The Court further held:

>(a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) the claims of the class representative are typical of the claims of the Settlement Class Members; and (d) the class representative will fairly and adequately represent the interests of the Settlement Class Members… the prerequisites for class certification under have been satisfied in that (a) questions of law and fact common to the Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (b) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

ECF No. 61 at ¶ 5-6.

## IV. FINAL APPROVAL SHOULD BE GRANTED

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

### A. THE SETTLEMENT IS THE RESULT OF INFORMED, ARM'S-LENGTH NEGOTIATIONS.

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, *Newberg on Class Actions* § 11:41 (4th ed. 2002). The requirement that a settlement be fair is designed to prevent collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. Newberg, *supra*, § 11:42; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings*, Nos. 07-2898, 09-2026, 2012 WL 651727 at *10 (N.D. Ill. Feb. 28, 2012). This Settlement satisfies this test.

To reach this Settlement, Plaintiff and his counsel thoroughly investigated the facts and law underlying the claims asserted in this action, and engaged in comprehensive discovery, as discussed above. In negotiating this Settlement, putative Class Counsel had the benefit of years

6

Case: 1:17-cv-03604 Document #: 80 Filed: 11/27/18 Page 12 of 20 PageID #:550

of experience with class actions in general and a familiarity with the facts of this case in particular. Only then was the settlement reached with the assistance of Hon. Morton Denlow (Ret.) during an in-person mediation session on July 26, 2018.

The fact that Plaintiff achieved an excellent result for the Settlement Class despite facing significant procedural and substantive hurdles is a testament to the non-collusive nature of the Settlement. Because the Settlement is the result of extensive, arm's-length negotiations between experienced and well-informed counsel, with the assistance of the Court, in the total absence of collusion, and represents a fair result, the Settlement is entitled to approval. *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 864 (7th Cir. 2014).

### B. SETTLEMENT CLASS MEMBERS RECEIVED THE BEST NOTICE PRACTICABLE.

This Court has already determined that the notice plan in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. *See* ECF No. 61, ¶ 10. This notice plan has been fully implemented by independent Class Administrator, Kurtzman Carson Consultants LLC ("KCC"). *See* Perry Dec. at ¶¶ 2-9, Exhibit 1 hereto.

Using the class records obtained by Plaintiff through discovery and in coordination with Defendant, KCC executed the Notice plan in the form previously approved by this Court. First, KCC received an excel spreadsheet containing two worksheets of class member data, totaling 29,760 records of phone numbers, call count, and names and addresses. *Id.* at ¶ 5. For records that did not have a name and address, KCC performed a reverse phone search on 8,580 records to obtain a name and address and successfully updated those records. *Id.* KCC then ran class mailing list through the National Change of Address Database to obtain updated 1,558 addresses and identified 2,240 duplicate records. *Id.* KCC also established the Settlement Website,

www.SantannaTCPA.com, which was established to provide information to the class members, answer frequently asked questions, and allow class members to submit a claim online. *Id.* at ¶ 9. Visitors to the website were able to download copies of the long form notice, the claim form, and other case-related documents. *Id.*

On September 20, 2018, KCC mailed the double postcard notice to 27,317 class members. *Id.* at ¶ 6. To date, KCC has received a total of 228 postcard notices returned by the U.S. Postal Service with forwarding addresses. *Id.* at ¶ 7. KCC caused the class member list to be updated with the new addresses and short form notice to be re-mailed to the updated addresses. *Id.* Prior to the filing deadline, 1,738 postcard notices were returned as undeliverable without a forwarding address. *Id.* at ¶ 8. KCC searched for updated addresses for these records and updated and re-mailed 401 postcard notices. *Id.* In total, notice was successfully delivered to more than 87% of the class, well exceeding the 70% benchmark set by the Federal Judiciary Center for a successful notice program. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/notcheck.pdf /$file/notcheck.pdf (Last Visited on November 26, 2018).

The Court-approved notice provided to the Settlement Class informed them of, among other things: (1) information about the Action, the Settlement, and the release; (2) deadlines for Settlement Class Members to make claims, opt out of the Settlement, or object to the Settlement; and (3) the date and location of the final approval hearing. Finally, KCC provided notice of the Settlement to all appropriate federal and state officials, pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1715(a)(2). *Id.* at ¶¶ 2-4.

The notice plan approved by this Court and implemented by KCC has successfully

8

provided notice of these proceedings and of the matters set forth therein, including the Agreement, to all parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

### C. THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

In evaluating fairness, a court should consider: "(1) the strength of the case for Plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the amount of opposition to the settlement by affected parties; (4) the opinion of competent counsel; and (5) the amount of discovery completed at the time of settlement." *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Applied to this case, the relevant criteria support final approval of the Settlement.

#### 1. The Strength of Plaintiff's Case Compared to the Amount of the Settlement

Although Plaintiff here believes that he would ultimately prevail on the merits at trial, success is far from assured. At every turn of the litigation and in negotiations, Santanna denied liability and vigorously defended their position. If approved, the Settlement would bring a sure end to what would be contentious and costly litigation centered on questions of whether Santanna is liable for the allegedly unlawful calls challenged in this action by their vendor. In this district and elsewhere, that question has often resulted in judgment for a TCPA defendant.

9

*See Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 2018, 2013 U.S. Dist. LEXIS 135230 (N.D. Ill. Sep. 23, 2013) (granting a motion to dismiss in a TCPA case based on a lack of vicarious liability; *Jones v. Royal Admin. Servs. Inc.*, 887 F.3d 443 (9th Cir. 2018); *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010 (9th Cir. Jan. 10, 2018) (both affirming summary dismissal of two TCPA cases, finding that the defendants could not be held vicariously liable for telemarketing calls made by third parties).

Furthermore, the possibility of summary dismissal of this class was also tangible following the Supreme Court's decision in Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Some post *Spokeo* courts have held that a plaintiff who has received an unsolicited call in violation of the TCPA, without more, has not alleged a sufficient Article III harm. *See e.g. Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016) ("One singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.")

Class certification is also far from automatic in TCPA cases. *Compare Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), *with Green v. Serv. Master*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.").

Even if a class was certified, it faced an uncertain fate. The TCPA's statutory damages provision for Do Not Call violations allows for damages of "up to $500 per call." *See* 47 U.S.C.

10

§ 227(c)(5). So, after a trial, the jury could award each DNC class member $1 (or less) for the illegal telephone calls received.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

These risks are gauged in comparison to the amount of recovery, which is approximately $198.00, far exceeding the average recovery in TCPA class action settlements. *See e.g. Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving TCPA settlement that provided estimated awards of $52.50 per class member); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (approving TCPA settlement providing an estimated $34.60 per claimant"); *See also Adams v. AllianceOne Receivables Mgt., Inc.*, No. 3:08-cv-00248 (S.D. Cal.) ($1.60 per class member); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198 (W.D. Wash.) ($3.10 per class member); *Bayat v. Bank of the West*, No. 13-cv-2376 (N.D. Cal.) ($3.85 per class member); *Couser v. Comenity Bank*, No. 12-cv-2484 (S.D. Cal.) ($2.13 per class member); *Franklin v. Wells Fargo Bank*, No. 14-cv-2349 (S.D. Cal.) ($3.78 per class member); *Kazemi v.*

11

*Payless ShoeSource, Inc.*, No. 3:09-cv-05143 (N.D. Cal.) ($1.18 per class member); *Kramer v. Autobytel, Inc.*, No. 4:10-cv-02722 (N.D. Cal.) ($0.26 per class member); *Kwan v. Clearwire Corp.*, No. 2:09-cv-01392 (W.D. Wash.) ($3.50 per class member); *Lushe v. Verengo*, No. 13-cv-07632 AB (PJWx) (C.D. Cal.) ($6.86 per class member); *Malta v. Freddie Mac & Wells Fargo Home Mtg.*, No. 3:10-cv-01290 (S.D. Cal.) ($3.94 per class member); *Sarabri v. Weltman, Weinberg & Reis Co.*, L.P.A. No. 3:10-cv-01777-AJB-NLS (S.D. Cal.) ($0.85 per class member). The relief provided here meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Final approval of a settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (citing *Isby*, 75 F.3d at 1199). Throughout the negotiation process, Defendants vigorously defended their position and expressed every intention of continuing a spirited defense through trial. Class Counsel have a significant amount of experience in consumer class action litigation and know that any case involving a nationwide class can, and often does, lead to costly litigation that goes on for years. Although Plaintiff have thoroughly investigated the factual and legal bases for their claims and have developed substantial evidence supporting their allegations, one cannot ignore the presence of significant risks in continuing the litigation had settlement not occurred, many of which are outlined above.

Given the significant risks of continued litigation—in addition to the extended costs and time needed to prepare for trial—the risk, expense, complexity, and likely duration of further litigation support approval of the Settlement.

12

### 3. Lack of Opposition to the Settlement

There has been an overwhelmingly positive response to the settlement, which includes *no objections* and only 5 requests for exclusion from the Settlement Class. Perry Dec. at ¶ 11. The lack of opposition to the Settlement favors approval. *Compare Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014) (finding that class counsel had "sold out the class" and that, "[c]onsidering the modesty of the settlement, the length and complexity of the forms, and the unfamiliarity of the average homeowner with arbitration, we're not surprised [with the 0.57% claims rate]"). The lack of *any objectors* to the settlement particularly favors a finding that it is fair and reasonable. *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001).

### 4. The Opinion of Counsel

Where Class Counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Isby*, 75 F.3d at 1200; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). Here, Class Counsel's opinion is that settlement in the best interest of the Settlement Class as a whole. Class Counsel have all attested that the settlement is fair, reasonable and an adequate recovery for the Class. *Murphy Decl.* ECF No. 56-5; *McCue Decl.* ECF No. 56-6; *Paronich Decl.* ECF No. 56-2.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings

Courts regularly approve settlements achieved "where counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 350, 350 (N.D. Ill. 2010) (internal quotations omitted)). As explained above, this settlement was only reached after over substantial litigation and discovery had been

completed. The fact that the Settlement was achieved through negotiations by well-informed, experienced counsel favors approval.

## V. CONCLUSION

The Settlement is fair, adequate, and reasonable, providing substantial benefits to the Settlement Class. This is an outstanding result in light of the recoveries potentially available under the law and the risks of continued litigation, and Plaintiff respectfully request that the Court approve the Settlement in its entirety. A proposed order is attached hereto as Exhibit 2.

Respectfully submitted,

PLAINTIFF,
individually and on behalf of a class of all persons
and entities similarly situated

Dated: November 27, 2018    By:  /s/ *Anthony I. Paronich*
        Edward A. Broderick
        Email: ted@broderick-law.com
        Anthony I. Paronich
        Email: anthony@broderick-law.com
        BRODERICK & PARONICH, P.C.
        99 High Street, Suite 304
        Boston, Massachusetts 02110
        Telephone: (617) 738-7080

        Brian K. Murphy
        MURRAY MURPHY MOUL BASIL LLP
        1114 Dublin Road
        Columbus, OH 43215
        Telephone: (614) 488-0400
        Facsimile: (614) 488-0401
        murphy@mmmb.com

        Matthew P. McCue
        Email: mmccue@massattorneys.net
        THE LAW OFFICE OF MATTHEW P. MCCUE
        1 South Avenue, Suite 3
        Natick, Massachusetts 01760
        Telephone: (508) 655-1415
        Facsimile: (508) 319-3077

        *Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2018, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

        /s/ *Anthony I. Paronich*
        Anthony I. Paronich

15